## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **MARIE F. HORN,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06cv00089 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, this court affirms the final decision of the Commissioner denying benefits.

### I. Background and Standard of Review

Plaintiff, Marie F. Horn, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423. (West 2003 & Supp. 2006). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d)(1).

-1-

of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642.)

The record shows that Horn protectively filed her application for DIB on or about February 23, 2000, alleging disability as of September 14, 1999, based on fibromyalgia and lumbar strain. (R. at 80-82, 90, 225.) Her application was denied initially and on reconsideration. (R. at 69-71, 72, 74-75, 226-27.) Horn then requested a hearing before an administrative law judge, ("ALJ"). (R. at 76.) The ALJ held a hearing on August 28, 2001, at which Horn was represented by counsel. (R. at 32-64.)

By decision dated October 25, 2001, the ALJ denied Horn's claim. (R. at 14-23.) After the ALJ issued his opinion, Horn pursued her administrative appeals, (R. at 10), but the Appeals Council denied her request for review. (R. at 6-8.) Horn then filed an action with this court seeking review of the ALJ's unfavorable decision. *See Horn v. Barnhart*, No. 1:02cv00183 (December 12, 2003). This court remanded Horn's case to the Commissioner for further development regarding Horn's mental impairment and its effect on her work-related abilities. (R. at 303-04, 376-87, 393-94.) Upon remand, the ALJ held another hearing on November 3, 2004, at which Horn was represented by

counsel. (R. at 305-75.)

By decision dated December 16, 2004, the ALJ denied Horn's claim. (R. at 286-300.) The ALJ found that Horn met the insured status requirements of the Act for DIB purposes through the date of the decision. (R. at 299.) The ALJ also found that Horn had not engaged in substantial gainful activity since her alleged onset of disability. (R. at 299.) The ALJ found that the medical evidence established that Horn suffered from severe impairments, namely fibromyalgia, depression, anxiety and borderline intellectual functioning, however, the ALJ found that Horn did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 299.) The ALJ also found that Horn's allegations regarding her limitations were not totally credible. (R. at 299.) The ALJ further found that Horn had the residual functional capacity to perform light work,[2] which did not require more than occasional climbing, balancing, stooping, kneeling, crouching or crawling. (R. at 299.) The ALJ also found that Horn had moderate and marked limitations as found by psychologist Tonya McFadden. (R. at 299.) The ALJ found that Horn could not perform her past relevant work. (R. at 300.) Based on Horn's age, education, past work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that there was a significant number of jobs in the national economy that Horn could perform, including those of a surveillance officer, a housekeeper, an auditing clerk and an information clerk. (R. at 300.) Therefore, the ALJ concluded that Horn was not under a disability as defined by the

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, she also can do sedentary work. *See* 20 C.F.R. § 404.1567(b) (2006).

Case 1:06-cv-00089-PMS   Document 15   Filed 04/26/07   Page 3 of 21   Pageid#: 104

Act and was not eligible for benefits. (R. at 300.) *See* 20 C.F.R. § 404.1520(g) (2006).

After the ALJ issued his opinion, Horn pursued her administrative appeals, but the Appeals Council denied her request for review. (R. at 246-48.) Horn then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2006). The case is before this court on Horn's motion for summary judgment filed February 16, 2007, and the Commissioner's motion for summary judgment filed March 21, 2007.

## *II. Facts*

Horn was born in 1953, (R. at 80, 310), which, at the time of the ALJ's decision, classified her as a "person closely approaching advanced age" under 20 C.F.R. § 404.1563(d) (2006). Horn obtained her general equivalency development, ("GED"), diploma, and has past relevant work experience as a cashier and a pharmacy helper. (R. at 91, 96, 317-18.)

Horn testified at her 2004 hearing that she was enrolled in college classes to obtain a Bachelor of Science Degree in Human Services. (R. at 310.) Horn stated that she attended six hours of class per week. (R. at 329.) She stated that she did poorly and that her grades were mostly Ds and Fs.[3] (R. at 311, 316.) Horn admitted that she was attending college classes in order to obtain gainful employment. (R. at 340.)

---

[3]A transcript of Horn's grades indicate that she received As and Bs. (R. at 419-22.)

Bonnie Martindale, a vocational expert, also testified at Horn's hearing. (R. at 351-74.) Martindale was asked to assume an individual of Horn's age, education and work experience, who had the residual functional capacity to perform light work with the ability to occasionally climb, balance, kneel, crouch crawl, stoop and bend. (R. at 356.) Martindale stated that such an individual could perform the jobs of a retail sales clerk and a clerk/cashier as typically performed. (R. at 356.) In addition, Martindale identified jobs as an auditing clerk and an information clerk. (R. at 359-61.) Martindale was asked to assume the same individual who had a mild to moderate limitation in her ability to understand, remember and carry out detailed or complex instructions, to maintain regular attendance and be punctual, to sustain an ordinary routine without special supervision, to work with or near others without being distracted by them, to complete a normal workday or workweek, to perform at a consistent pace and to respond appropriately to changes in a routine work setting and who was seriously limited, but not precluded, in her ability to respond appropriately to work pressures in a normal work setting. (R. at 356-57.) Martindale stated that the individual could perform the jobs previously identified. (R. at 357.)

Martindale was then asked to consider an individual who had a marked limitation in her ability to carry out detailed instructions, to interact with the public, to interact appropriately with supervisors, to respond appropriately to work pressures in a usual work setting and to respond appropriately to changes in a routine work setting. (R. at 357-58.) Martindale stated that the individual could not perform the jobs previously identified, but could perform jobs as a surveillance officer/monitor and a housekeeper. (R. at 358-59.)

Martindale was then asked to consider an individual of Horn's age, education and past work experience, who had moderate limitations in her ability to understand, remember and carry out short, simple instructions, to make judgments on simple work-related decisions, to interact appropriately with the public, to interact appropriately with co-workers, to respond appropriately to changes in a routine work setting and who had marked limitations in her ability to understand, remember and carry out detailed instructions, to interact appropriately with supervisors and to respond appropriately to work pressures and usual work settings. (R. at 361-62.) Martindale stated that the individual could perform the jobs of an auditing clerk and an information clerk.[4] (R. at 360, 362.) When asked to consider the limitations as set out in psychologist Steward's assessment, Martindale stated that there were no jobs available that such an individual could perform. (R. at 363-65, 449-50.) When asked to consider the limitations as set out in Dr. Bailey's assessments, Martindale stated that there would be no jobs available that such an individual could perform. (R. at 204-09, 365-67.)

In rendering his decision, the ALJ reviewed records from Russell County Schools; Lebanon Physical Therapy; Dr. Dwight L. Bailey, M.D.; Johnston Memorial Hospital; Dr. Michael J. Hartman, M.D., a state agency physician; Dr. Frank M. Johnson, M.D.; a state agency physician; Dr. Michael W. Bible, M.D.; Dana P.

---

[4]Martindale testified that the jobs as an auditing clerk and an information clerk were considered to be "SVP one and two." (R. at 360.) "SVP" is defined as Specific Vocational Preparation. Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. Level one indicates that the individual would need only a short demonstration to learn the job. Level two indicates anything beyond a short demonstration up to and including one month. *See* II DICTIONARY OF OCCUPATIONAL TITLES, 1009 (4th ed. rev. 1991).

Claunch, Ph. D., a licensed clinical psychologist; Hugh Tenison, Ph.D., a state agency psychologist; R. J. Milan Jr., Ph.D., a state agency psychologist; L. Andrew Steward, Ph.D., a licensed clinical psychologist; Tonya McFadden, M.A., a licensed psychologist; and Old Dominion University.

On August 5, 1999, Horn had a normal cranial CT scan. (R. at 175.) On August 13, 1999, x-rays of Horn's thoracic spine were normal with the exception of possible scoliosis. (R. at 174.) X-rays of Horn's lumbar spine showed paravertebral muscle spasm and minimal marginal arthritic lipping. (R. at 174.)

On February 24, 2000, Dr. Dwight L. Bailey, M.D., indicated that Horn could not perform work of any kind beginning August 25, 1999. (R. at 177-78.) He indicated that the duration of Horn's condition would probably last until September 15, 2000. (R. at 177.) Dr. Bailey indicated that Horn was restricted from lifting, bending, prolonged standing, prolonged sitting or repetitive use of arms or legs. (R. at 177.) On October 24, 2000, Dr. Bailey indicated that Horn was disabled due to fibromyalgia. (R. at 201.) Dr. Bailey completed an assessment indicating that Horn could occasionally lift and/or carry items weighing up to five pounds. (R. at 204–06, 242-44.) He indicated that Horn could stand and/or walk a total of four hours in an eight-hour workday and that she could do so for up to 15 minutes without interruption. (R. at 204, 242.) He indicated that Horn could sit a total of four hours in an eight-hour workday and that she could do so for up to 30 minutes without interruption. (R. at 205, 243.) Dr. Bailey indicated that Horn should never climb, stoop, kneel, crouch or crawl and only occasionally balance. (R. at 205, 243.) He indicated that Horn's abilities to reach, to

-7-

handle, to push and to pull were limited. (R. at 205, 243.) He restricted Horn from working around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity and vibration. (R. at 206, 244.)

In November 2000, Dr. Bailey completed a mental assessment indicating that Horn had a limited but satisfactory ability to follow work rules and to maintain personal appearance. (R. at 207-09.) Dr. Bailey indicated that Horn had a seriously limited, but not precluded, ability to relate to co-workers, to use judgment, to function independently, to maintain attention and concentration, to understand, remember and carry out detailed and simple job instructions, to behave in an emotionally stable manner and to demonstrate reliability. (R. at 207-08.) He indicated that Horn had no useful ability to deal with the public, to interact with supervisors, to deal with work stresses, to understand, remember and carry out complex job instructions or to relate predictably in social situations. (R. at 207-08.)

On August 6, 2001, Dr. Bailey completed a mental assessment indicating that Horn had a more than satisfactory ability to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 236-38.) Dr. Bailey also indicated that Horn had a limited but satisfactory ability to follow work rules, to relate to co-workers, to function independently, to understand, remember and carry out detailed job instructions and to demonstrate reliability. (R. at 236-37.) Dr. Bailey indicated that Horn had a seriously limited, but not precluded, ability to deal with the public, to use judgment, to interact with supervisors, to understand, remember and carry out complex job instructions, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 236-37.) He indicated that Horn had a poor

-8-

ability to deal with work stresses and to maintain attention and concentration. (R. at 236.) Dr. Bailey also indicated that the pain from the fibromyalgia made it difficult for Horn to concentrate or to deal with stress. (R. at 236.)

On August 6, 2001, Dr. Bailey completed a medical assessment indicating that Horn could occasionally lift and/or carry items weighing up to five pounds. (R. at 239-41.) He indicated that Horn could stand and/or walk a total of three hours in an eight-hour workday and that she could do so for up to one hour without interruption. (R. at 239.) He indicated that Horn could sit a total of three hours in an eight-hour workday and that she could do so for up to one hour without interruption. (R. at 240.) Dr. Bailey indicated that Horn should never climb, stoop, kneel, crouch or crawl and only occasionally balance. (R. at 240.) He indicated that Horn's abilities to reach, to handle, to push and to pull were limited. (R. at 240.) He restricted Horn from working around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity and vibration. (R. at 241.)

Dr. Bailey completed a medical assessment[5] indicating that Horn could occasionally lift and carry items weighing up to 10 pounds and frequently lift and carry items weighing up to 10 pounds. (R. at 432-35.) He indicated that Horn could stand and/or walk for up to two hours in an eight-hour workday. (R. at 432.) Dr. Bailey indicated that Horn must periodically alternate sitting and standing to relieve pain or discomfort. (R. at 433.) He indicated that Horn's ability to push and/or pull was limited

_____

[5]Dr. Bailey completed this assessment on January 13. (R. at 435.) The year on this assessment is illegible. (R. at 435.)

in her upper and lower extremities. (R. at 433.) Dr. Bailey indicated that Horn could occasionally climb, balance and stoop and never kneel, crouch or crawl. (R. at 433.) He also indicated that Horn was limited in her ability to reach in all directions. (R. at 434.) He restricted Horn from working around heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity and vibration. (R. at 435.)

On April 7, 2000, Dr. Michael J. Hartman, M.D., a state agency physician, indicated that Horn had the residual functional capacity to perform medium work.[6] (R. at 153-60.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 156-58.)

On April 7, 2000, Hugh Tenison, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Horn suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 144-52.) Tenison also indicated that Horn suffered from a slight restriction on her activities of daily living, experienced no difficulties in maintaining social functioning, seldom experienced deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner and had never experienced episodes of deterioration or decompensation in work or work-like settings. (R. at 151.) Tenison indicated that Horn's activities of daily living were limited by pain and that her allegations of mental limitations were partially credible. (R. at 145.)

---

[6]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2006).

-10-

On September 27, 2000, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Horn had the residual functional capacity to perform light work. (R. at 179-86.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 182-84.)

On September 28, 2000, R. J. Milan Jr., Ph.D., a state agency psychologist, completed a PRTF indicating that Horn suffered from a nonsevere affective disorder and anxiety-related disorder. (R. at 187-200.) Milan did, however, recognize that Horn suffered from depression and anxiety. (R. at 190, 192.) Milan also indicated that Horn suffered from no limitations in her activities of daily living, experienced no difficulties in maintaining social functioning or in maintaining concentration, persistence or pace and had never experienced episodes of deterioration or decompensation. (R. at 197.) Milan indicated that Horn's activities of daily living were limited by pain. (R. at 199.)

In May 2001, Dr. Michael W. Bible, M.D., saw Horn for her musculoskeletal complaints. (R. at 210-11.) Horn had good muscle strength in the upper and lower extremities. (R. 211.) Musculoskeletal examination revealed good range of motion of the shoulders with no inflammation or joint tenderness. (R. 211.) Dr. Bible diagnosed fibromyalgia. (R. at 210.) Dr. Bible reported that fibromyalgia did not lead to arthritis, deformities or disability. (R. at 210.) Dr. Bible recommended regular consistent exercise. (R. at 210.)

On August 8, 2001, Dana P. Claunch, Ph. D., a licensed clinical psychologist, performed a consultative psychological evaluation. (R. at 217-24.) Claunch diagnosed Horn with a pain disorder associated with both psychological factors and a general

-11-

medical condition, chronic, an anxiety disorder, not otherwise specified, and a dependent personality disorder. (R. at 220.) Claunch placed Horn's then-current Global Assessment of Functioning, ("GAF")[7], score at 51.[8] (R. at 220.)

Claunch also completed a mental assessment indicating that Horn had a limited but satisfactory ability to follow work rules and to understand, remember and carry out simple job instructions. (R. at 222-24.) Claunch indicated that Horn had a seriously limited, but not precluded, ability to relate to co-workers, to use judgment, to interact with supervisors, to function independently, to understand, remember and carry out detailed job instructions and to maintain personal appearance. (R. at 222-23.) He indicated that Horn had no ability to deal with the public, to deal with work stresses, to maintain attention and concentration, to understand, remember and carry out complex job instructions, to behave in an emotionally stable manner, to relate predictably in social situations or to demonstrate reliability. (R. at 222-23.)

On June 4, 2004, L. Andrew Steward, Ph.D., a licensed clinical psychologist, evaluated Horn at the request of Horn's attorney. (R. at 451-59.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), was administered, and Horn obtained a verbal IQ score of 91, a performance IQ score of 72 and a full-scale IQ score of 80. (R. at 455.) Steward diagnosed major depressive disorder, single episode, moderate,

---

[7]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[8]A GAF of 51 to 60 indicates that the individual has moderate symptoms or moderate difficulty in social, occupational or school functioning. *See* DSM-IV at 32.

-12-

generalized anxiety disorder and borderline intellectual functioning. (R. at 457.) Steward indicated that Horn had a then-current GAF score of 51. (R. at 458.) Steward reported that Horn was permanently and totally disabled. (R. at 458.)

Steward completed a mental assessment indicating that Horn was moderately[9] limited in her ability to understand, remember and carry out short, simple instructions, to make judgments on simple work-related decisions, to interact appropriately with the public, to interact appropriately with co-workers and to respond appropriately to changes in a routine work setting. (R. at 449-50.) He indicated that Horn had a marked[10] limitation in her ability to understand, remember and carry out detailed instructions, to interact appropriately with supervisors and to respond appropriately to work pressures in a usual work setting. (R. at 449-50.)

On August 23, 2004, Tonya McFadden, M.A., a licensed psychologist, evaluated Horn at the request of Disability Determination Services. (R. at 460-66.) McFadden diagnosed major depressive disorder and assessed a then-current GAF score of 55. (R. at 465.)

McFadden completed a mental assessment indicating that Horn had a mild[11] limitation in her ability to maintain attention and concentration for extended periods,

---

[9]Moderate indicates that the individual can still perform the function satisfactorily. (R. at 449.)

[10]Marked is defined as a serious limitation. The ability to function is seriously limited, but not precluded. (R. at 449.)

[11]Mild indicates that the individual can generally function very well. (R. at 467.)

to make simple work-related decisions, to interact appropriately with the public, to interact appropriately with supervisors and to interact appropriately with co-workers. (R. at 467-69.) She indicated that Horn had a moderate[12] limitation in her ability to understand, remember and carry out detailed or complex instructions, to perform activities within a schedule, maintain regular attendance and be punctual, to sustain an ordinary routine without special supervision, to work with or near others without being distracted by them, to complete a normal workday or workweek, to perform at a consistent pace and to respond appropriately to changes in a routine work setting. (R. at 467-68.) McFadden indicated that Horn had a marked[13] limitation in her ability to respond appropriately to work pressures in a normal work setting. (R. at 468.)

### III.  Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2006); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520 (2006). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review

---

[12]Moderate indicates that the individual will have some difficulty, but overall is still able to function satisfactorily. Moderate is midway between "mild" and "marked." (R. at 467.)

[13]Marked is defined as a serious limitation. The ability to function is severely limited, but not totally precluded. (R. at 467.)

does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2006).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy the burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2003 & Supp. 2006); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated December 16, 2004, the ALJ denied Horn's claim. (R. at 286-300.) The ALJ found that the medical evidence established that Horn suffered from severe impairments, namely fibromyalgia, depression, anxiety and borderline intellectual functioning, however, the ALJ found that Horn did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 299.) The ALJ further found that Horn had the residual functional capacity to perform light work, which did not require more than occasional climbing, balancing, stooping, kneeling, crouching or crawling. (R. at 299.) The ALJ also found that Horn had moderate and marked limitations as found by psychologist McFadden. (R. at 299.) The ALJ found that Horn could not perform her past relevant work. (R. at 300.) Based on Horn's age, education, past work experience and residual functional capacity and the testimony of a vocational expert, the ALJ found that there was a significant number of jobs in the national economy that Horn

could perform, including those of a surveillance officer, a housekeeper, an auditing clerk and an information clerk. (R. at 300.) Therefore, the ALJ concluded that Horn was not under a disability as defined by the Act and was not eligible for benefits. (R. at 300.) *See* 20 C.F.R. § 404.1520(g) (2006).

As stated above, if the Commissioner has applied the proper legal standards, the court's function in the case is limited to determining whether substantial evidence exists in the record to support the Commissioner's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Horn argues that the ALJ erred by finding that she did not meet the listing for depressive disorder, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04, and anxiety disorder, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06. (Plaintiff's Motion For Summary Judgment And Memorandum of Law, ("Plaintiff's Brief"), at 10-19.) Horn further argues that the ALJ did not give proper weight to the opinions of her treating physician. (Plaintiff's Brief at 19-26.)

Based on my review of the record, I reject Horn's argument that the ALJ erred by finding that her depression did not meet or equal a listed impairment. (Plaintiff's

Brief 10-19.) The qualifying criteria for the listed impairment for depression is found at 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04. To meet the requirements of this section, a claimant must show that she suffers from at least four of the listed symptoms of depressive syndrome, which result in at least two of the following:

1.  Marked restriction of activities of daily living;
2.  Marked difficulties in maintaining social functioning;
3.  Marked difficulties in maintaining concentration, persistence, or pace; or
4.  Repeated episodes of decompensation, each of extended duration.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(A)(1), 12.04(B) (2006). A claimant also may meet the requirements of this section if she has a medically documented history of a chronic affective disorder of at least two years' duration that has caused more than minimal limitation of ability to do basic work activities. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.04(C) (2006).

Psychologist McFadden found that Horn had mild limitations in her ability to maintain attention and concentration, to make simple work-related decisions, to interact appropriately with the public, to interact appropriately with supervisors and to interact appropriately with co-workers. (R. at 467-69.) The ALJ relied on McFadden's assessment because it was closer to Horn's admitted level of functioning. (R. at 297.) The record shows that Horn is a college student, who received As and Bs, and that she intended to obtain her college degree to gain employment. (R. at 340, 419-22.) The record indicates that Horn drove herself to and from college, that she used a computer to access the internet and prepare college reports, that she read, watched television and managed the household. (R. at 108-11, 336, 350, 453.) This is indicative of a level of

attention and concentration that is not significantly impaired for at least simple tasks and for college work. In addition, there is no evidence that Horn sought treatment for her mental impairment. Furthermore, the vocational expert testified that the limitations suggested by McFadden did not preclude all jobs. (R. at 356-57.) Based on this, I find that substantial evidence exists to support the ALJ's finding that Horn did not meet or equal § 12.04.

I also reject Horn's argument that the ALJ erred by finding that her anxiety did not meet or equal the listed impairment for anxiety-related disorders found at § 12.06. To meet § 12.06, a claimant must show by medically documented findings that she suffers from at least one of the following:

1. Generalized persistent anxiety accompanied by three of the following: motor tension, autonomic hyperactivity, apprehensive expectation or vigilance and scanning;
2. A persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity or situation;
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week;
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(A) (2006). A claimant also must show that her condition results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked

-18-

deficiencies of concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(B) (2006). If a claimant cannot show that her condition resulted in two of the previous problems, she still may qualify for benefits under this section if she can show that her symptoms have resulted in a complete inability to function independently outside the area of her home. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(C) (2006). Based on my review, I find that the record contains no evidence from any psychological or psychiatric expert stating that Horn's anxiety met these criteria. Therefore, I find that substantial evidence supports the ALJ's finding that Horn's condition did not meet or equal the requirements of § 12.06.

Horn further argues that the ALJ erred by rejecting the opinions of Dr. Bailey and psychologist Claunch. I disagree. The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2) (2006). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

In his opinion, the ALJ stated that he was rejecting Dr. Bailey's opinion of

-19-

physical and mental disability because it was inconsistent with the objective medical evidence. (R. at 292.) A physical therapy report dated September 15, 1999, shows that Horn unilaterally elected to discontinue treatment after only seven visits, the last of which included overhead work with a 20-pound trapeze bar. (R. at 130.) The exercise regimen at that point consisted of back extensions with 30 pounds and throwing a five-inch medicine ball. (R. at 130.) X-rays of Horn's thoracic spine were normal with the exception of possible scoliosis. (R. at 174.) In May 2001, Dr. Bible, a rheumatologist, reported that Horn had good muscle strength in the upper and lower extremities and that she had good range of motion of the shoulders with no inflammation or joint tenderness. (R. at 211.) Dr. Bible reported that fibromyalgia did not lead to arthritis, deformities or disability. (R. at 210.) He recommended that Horn participate in regular, consistent exercise. (R. at 210.) The state agency physicians found that Horn could perform medium and light work. (R. at 153-60, 179-86.)

The ALJ rejected psychologist Claunch's opinion because her limitations would not allow Horn to perform the activities of daily living to which she admitted to performing. (R. at 293.) Thus, I find that substantial evidence supports the ALJ's rejection of Dr. Bailey's and psychologist Claunch's opinions.

### III. Conclusion

For the foregoing reasons, I will deny Horn's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision of the Commissioner denying benefits.

-20-

An appropriate order will be entered.

DATED:      This 26th day of April 2007.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE